UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | DOCKET NO. 3:24-cr-136-KDB |
| v. ) | |
| ) | **SENTENCING MEMORANDUM** |
| PETER ANTHONY THOMAS ) | |
| ) | |

NOW COMES the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and hereby submits this sentencing memorandum. Thomas's flagrant violation of his federal payroll tax obligations over many years that served to unjustly enrich his companies and himself by more than $2.5 million and deprive the Federal Government of funds used to provide important retirement and disability benefits to employees warrants a significant term of imprisonment "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

I.  **BACKGROUND**

On June 24, 2024, the defendant, Peter Anthony Thomas, was charged by Bill of Information with one count of Failure to Pay Over Trust Fund Taxes, in violation of 26 U.S.C. § 7202. On July 2, 2024, the defendant pleaded guilty to the Bill of Information. The Presentence Report ("PSR") fully incorporates the Factual Basis and the Statement of Relevant Conduct. Presentence Report ("PSR") (Doc. 19) at ¶¶ 6-18 and 20-27.

Thomas was the owner of Club One CLT, LLC, Sports ONE, Inc., Sports ONE CLT LLC, and PT Media, LLC, which operated as sports-themed bars/restaurants/lounges in Charlotte, North Carolina. Thomas also owned several establishments in Florida and Maryland, including Bar One Miami Beach LLC and Bar One Baltimore LLC. Thomas was the responsible person for these

1

businesses; he was responsible for collecting trust fund taxes and accounting for employment taxes by filing Forms 941 with the IRS and paying over to the IRS the employment taxes for all of these entities. He exercised control over the business and financial affairs by having signature authority on, and control over, bank accounts, deciding which bills were paid, hiring and firing employees, negotiating contracts, and signing tax returns. In total, between 2017 and 2023, Thomas caused Club One CLT, Sports ONE, Sports ONE CLT, PT Media, Bar One Miami Beach, and Bar One Baltimore to fail to pay over $2,526,131.99 in employment taxes, including more than $1,740,000 in trust fund taxes from the wages of his employees.

Instead of paying the employment taxes that were due on behalf of his businesses, between 2017 and 2022 Thomas used the taxes for other purposes, including more than $2.9 million in transfers between bank accounts for Club One CLT, Sports ONE, Sports ONE CLT, PT Media, Bar One Miami Beach, and Bar One Baltimore which he then used to open new establishments, $2.9 million in cash withdrawals, expenditures on travel and rideshares totaling $374,737.97, and expenditures on retail totaling $252,714.78, including on high-end purchases at Neiman Marcus, Prada, Louis Vuitton, and Givenchy, among others.

The chart below details the total tax loss, including relevant conduct for that specific entity. For some of the quarters listed below, Thomas willfully failed to account for the trust fund taxes due and owing to the IRS on Forms 941 and willfully failed to pay over to the IRS the trust fund taxes due and owing to the IRS on behalf of the employees of his businesses.

| | Club One CLT | | |
|---|---|---|---|
| **Quarter Ending** | **Return Filed?** | **Employer's FICA Due** | **Trust Fund Taxes Due[1]** |
| 12/31/2017 | Yes | $10,330.40 | $27,228.40 |
| 3/31/2018 | Yes | $4,131.90 | $23,878.02 |
| 6/30/2018 | No | $7,286.17 | $24,180.17 |
| 9/30/2018 | Yes | $2,518.24 | $16,728.24 |

---

[1] Employee's portion of FICA and income tax withheld.

| Quarter Ending | Return Filed? | Employer's FICA Due | Trust Fund Taxes Due |
|---|---|---|---|
| 12/31/2018 | Yes | $2,949.72 | $19,526.72 |
| 3/31/2019 | No | $2,823.08 | $19,328.43 |
| 6/30/2019 | No | $4,704.43 | $19,328.43 |
| 9/30/2019 | No | $4,704.43 | $19,328.43 |
| 12/31/2019 | No | $4,704.43 | $19,328.43 |
| **Sports ONE** | | | |
| Quarter Ending | Return Filed? | Employer's FICA Due | Trust Fund Taxes Due |
| 03/31/2017 | Yes | $10,948.45 | $20,019.45 |
| 06/30/2017 | Yes | $10,486.66 | $19,409.66 |
| 09/30/2018 | Yes | $13,689.07 | $25,681.07 |
| 12/31/2017 | Yes | $11,604.82 | $21,482.82 |
| 3/31/2018 | No | $14,076.41 | $25,028.41 |
| 6/30/2018 | No | $11,474.86 | $19,890.86 |
| **Sports ONE CLT** | | | |
| Quarter Ending | Return Filed? | Employer's FICA Due | Trust Fund Taxes Due |
| 9/30/2018 | Yes | $10,152.57 | $17,118.62 |
| 12/31/2018 | Yes | $9,321.97 | $17,867.97 |
| 3/31/2019 | No | $7,509.22 | $14,580.22 |
| 6/30/2019 | No | $13,537.49 | $26,676.49 |
| 9/30/2019 | Yes | $12,073.23 | $28,634.23 |
| 12/31/2019 | Yes | $10,160.73 | $19,111.73 |
| **PT Media** | | | |
| Quarter Ending | Return Filed? | Employer's FICA Due | Trust Fund Taxes Due |
| 3/31/2020 | Yes | $0 | $17,549.56 |
| 6/30/2020 | No | $2,773.32 | $4,976.82 |
| 9/30/2020 | No | $5,029.32 | $9,134.32 |
| 12/31/2020 | Yes | $7,290.16 | $12,693.16 |
| 3/30/2021 | No | $18,324.74 | $40,624.24 |
| 6/30/2021 | No | $18,324.74 | $40,624.24 |
| 9/30/2021 | No | $14,512.26 | $30,095.16 |
| 3/31/2022 | Yes | $8,589 | $15,884 |
| 9/30/2022 | Yes | $151.23 | $283.10 |
| **Bar One Miami Beach** | | | |
| Quarter Ending | Return Filed? | Employer's FICA Due | Trust Fund Taxes Due |
| 12/31/2019 | Yes | $7,439.38 | $16,493.47 |
| 3/31/2020 | Yes | $11,726.27 | $21,750.75 |
| 6/30/2020 | Yes | $5,758.60 | $12,199.23 |
| 9/30/2020 | Yes | $26,921.20 | $58,833.13 |
| 12/31/2020 | Yes | $34,751.73 | $77,146.23 |
| 3/30/2021 | Yes | $44,865.83 | $102,070.04 |
| 6/30/2021 | Yes | $51,864.06 | $124,692.57 |

| | | | |
|---|---|---|---|
| 9/30/2021 | Yes | $51,864.06 | $124,692.57 |
| 12/31/2021 | YES | $0 | $92,080.30 |
| 3/31/2022 | Yes | $40,254.14 | $84,074.03 |
| 6/30/2022 | Yes | $35,681.82 | $74,609.62 |
| 9/30/2022 | Yes | $48,507.82 | $98,478.03 |
| 12/31/2022 | Yes | $0 | $15,294.46 |
| **Bar One Baltimore** | | | |
| **Quarter Ending** | **Return Filed?** | **Employer's FICA Due** | **Trust Fund Taxes Due** |
| 3/31/2022 | Yes | $26,633.80 | $45,496.90 |
| 6/30/2022 | Yes | $35,662.51 | $63,258.27 |
| 9/30/2022 | Yes | $35,943.50 | $58,653.34 |
| 12/31/2022 | Yes | $0 | $34,451.96 |
| 3/31/2023 | Yes | $24,328.17 | $45,389.82 |
| 6/30/2023 | Yes | $8,629.32 | $15,231.09 |

## II. ADVISORY GUIDELINES

The PSR adopted the computation agreed upon in the plea agreement and the final offense level, after acceptance of responsibility, is a level 17. PSR at ¶¶ 32-41. With a Criminal History Category of I, the Guideline imprisonment range is 24 to 30 months. *Id*. at ¶¶ 49 and 76.

## III. 18 USC § 3553(a) SENTENCING FACTORS

The Court must consider the § 3553(a) factors in fashioning a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. The Court must also avoid unwarranted sentencing disparities. The need for the sentence to reflect the seriousness of the offense, the nature and circumstances of the offense, the need to promote respect for the law, and to afford adequate deterrence, both specific and general, support a within-Guidelines sentence.

A. Seriousness of the Offense, Nature and Circumstances of the Offense, and the Need to Promote Respect for the Law

Thomas's repeated and deliberate tax offenses, causing a tax loss of more than $2.5 million, merit at least 24 months of imprisonment. The only motive to commit this crime was greed, and he continued to flaunt the law despite the IRS and other professionals reminding him of his legal obligations. While the tax loss figure alone demands a significant sentence of imprisonment it

4

does not tell the full story of Thomas's criminal conduct. Thomas knew trust fund taxes had been withheld from his employees' wages, he knew he was required to pay over those taxes to the IRS, and he chose not to pay over those taxes. Instead, he used the funds to personally enrich himself and to expand and support his other business ventures.

Thomas has a long history of employment tax non-compliance which put him on notice of his tax obligations as the responsible person.[2] Thomas's non-compliance with federal employment taxes began as early as 2012 with a nightclub he owned in Atlanta, Bar One ATL, that ultimately shuttered because of employment tax liabilities. In 2014, Thomas submitted to an Interview with Individual Relative to Trust Fund Recovery Penalty where he indicated that he was the responsible party for the taxes. The IRS sent numerous notices to Thomas about his outstanding tax liabilities for Bar One ATL. Club One CLT and Sports ONE were also examined by IRS and in 2018 the IRS assessed employment taxes and penalties against him and issued levies on his business bank accounts.

Thomas signed numerous Forms 941 filed with the IRS which detailed the amount of trust fund taxes withheld from his employees' wages and due to the IRS. The employees who assisted Thomas with payroll consistently reminded him when employment taxes were due. Conversations and written communications between Thomas and some employees suggest he was never interested in paying over his employees' trust fund taxes; on at least one occasion, he explicitly directed an employee to not pay such taxes to the IRS. Thomas's accountants did the same and, indeed, one accountant admonished Thomas stating, "the IRS doesn't play with payroll taxes." Thomas was well-aware of the potential consequences that might result if he did not pay what he owed. And yet, his changing of business names and electronic identification numbers for the same

---

[2] Thomas also has a long history of tax non-compliance with various state taxing authorities, including in Georgia, North Carolina, and Florida.

business location, closing and opening of bank accounts, and use of his brother as a nominee indicate he made affirmative efforts to not pay.

The Sentencing Commission has recognized that "[t]ax offenses, in and of themselves, are serious offenses." § 2T1.1 cmt. background. In addition to being a serious offense, paying over withheld trust fund taxes is one of the most basic responsibilities an employer has to the government. It is also a simple responsibility; it does not involve a complex set of IRS regulations. Unfortunately, because of this simplicity, not paying employment taxes is an easy crime to commit and provides employers with access to funds that are simply not the employers to do with as they please. The tax laws do not permit an employer to choose to use the monies held in trust for the United States for other purposes, such as to pay business expenses.

Moreover, tax offenses are not victimless crimes. For employment tax violations, when a business owner fails to pay their employment taxes, they victimize other parties. First, the United States loses tax revenue that it depends on. Once the payroll taxes are withheld from the employees' wages, the United States is required to credit the amount withheld against the employees' individual tax liabilities, regardless of whether such taxes are actually paid to the United States. 26 U.S.C. § 31(a); 26 C.F.R. § 1.31(a); *Slodov v. United States*, 436 U.S. 238, 243 (1978).

Thus, the United States suffers a double loss, in that it does not receive the payroll taxes that lawfully belong to the government, and in that it affirmatively pays the Social Security, etc. contributions for the employees for the delinquent period.

As noted by the Treasury Inspector General for Tax Administration in a report addressing the need to more effectively address employment tax crimes, "[e]mployment tax embezzlement is an especially egregious crime because the employer . . . violates their fiduciary responsibility to

6

remit the taxes on behalf of their employees." *A More Focused Strategy Is Needed to Effectively Address Egregious Employment Tax Crimes*, March 21, 2017, Ref. No. 2017-IE-R004, p. 3. The report stated further that "[w]hen employers willfully fail to account for and deposit employment taxes which they are holding in trust on behalf of the Federal Government, they are in effect stealing from the Government." *Id*. at p. 4.

Thomas, like most tax cheats, was motivated by greed. Thomas defied the tax laws, expanding his business, hiring more employees, increasing overhead and adding more business locations at the expense of his legal obligations. Americans can spend *their* money as they see fit, including on business ventures. However, they cannot steal *other people's* money—in this case their employees' payroll taxes—to prop up their otherwise failing business ventures. *See Davis v. United States*, 961 F.2d 867 (9th Cir. 1992) (affirming conviction in which "The federal government is in effect subsidizing the corporation's recovery by foregoing collectible tax dollars."); *Thibodeau v. United States*, 828 F.2d 1499, 1506 (11th Cir. 1987) (per curiam) ("The government cannot be made an unwilling partner in a business experiencing financial difficulties."); *Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir. 1979) ("The United States may not be made an unwilling joint venturer in the corporate enterprise.").

B. <u>Need to Afford Adequate Deterrence to Criminal Conduct</u>

One of the paramount factors the Court must consider in imposing sentence under Section 3553(a) is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). "[T]axes are the lifeblood of government, and their prompt and certain availability an imperious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). Criminal tax prosecutions serve not only to punish the violators, but also to promote general deterrence and encourage all taxpayers to abide by the rules and pay their fair share of taxes. We respectfully

7

submit that a meaningful term of imprisonment—that is, within the Guidelines range—is essential to achieve the goals of general and specific deterrence, especially given the nature and history of this defendant.

A sentence within the Guidelines range is appropriate and necessary to provide the requisite level of specific and general deterrence. 18 U.S.C. § 3553(a)(2)(B). Employment taxes are a tempting source of funds for small business owners like the defendant. However, these withheld funds are to be held in trust by the employer and not used for their own wants and needs. It is tantamount to theft, and it is important that the sentence reflect the importance of paying over these withheld taxes to the IRS. Further, all employers in this country are required to pay employment taxes, so sentences in cases such as the present case have a wide-reaching effect. Thus, the defendant's sentence should be firm in order to promote deterrence among employers nationwide.

Where the incidence of prosecution is lower, the level of punishment must be higher to obtain the same level of deterrence. *See generally*, Louis Kaplow and Steven Shavell, "Fairness Versus Welfare," 114 Harv. L. Rev. 961, 1225-1303 (2001). "Studies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect." Joshua D. Blank, *In Defense of Individual Tax Privacy*, 61 EMORY L.J. 265, 321 (2011-2012).

General deterrence is an essential means of minimizing the ever-increasing amount of money estimated to be lost each year through tax fraud. The United States tax system relies on voluntary compliance. *See United States* v. *Ture*, 450 F.3d 352, 357 (8th Cir. 2006) ("The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system"). The IRS's most recent study of tax compliance estimates that only 85% of individuals

8

are compliant, leaving a yearly tax gap of $496 billion in unreported and uncollected taxes.[3] The underreporting tax gap for employer FICA and FUTA taxes is estimated to be $29 billion, which represents 6% of the total tax gap.[4]

The Fourth Circuit has explicitly endorsed the vital importance of incarcerating tax scofflaws as a means of general deterrence:

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

*United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010).

In sum, the Government cannot ensure compliance with the Internal Revenue Code if the general public believes there are no meaningful repercussions for failing to comply with tax laws and regulations. Sentencing Thomas to a significant term of incarceration will convey the message to others that systematic and repeated failure to pay payroll taxes will be met with harsh punishment.

## IV. RESTITUTION

Thomas has agreed to pay restitution to the IRS of $2,526,131.99. Pursuant to 18 U.S.C. § 3663(a)(3) the Court should order to pay the restitution to the IRS as agreed to by the parties.

## V. CONCLUSION

For years, the defendant undermined the U.S. tax system and kept for himself over $2,500,000 in employment taxes that he withheld from the paychecks of his employees. This serious crime deserves serious punishment. Therefore, the United States respectfully recommends

---

[3] *Tax Gap Estimates for Tax Years 2014-2016*, Publication 1415 (Rev. 10-2022), *available at* https://www.irs.gov/newsroom/the-tax-gap.
[4] *Id.*

9

Case 3:24-cr-00136-KDB-SCR   Document 21   Filed 12/09/24   Page 9 of 11

that this Court sentence the defendant to a within-Guidelines sentence of 24 months in prison, a three-year term of supervised release, and restitution payable to the IRS in the amount $2,526,131.99. Such a sentence is appropriate in this case and consistent with the U.S. Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED, this the 9th day of December, 2024.

DENA J. KING
UNITED STATES ATTORNEY

/s/ CARYN FINLEY
CARYN FINLEY
Assistant United States Attorney
New York Bar Number: 3953882
caryn.finley@usdoj.gov

s/ ERIC A. FRICK
ERIC A. FRICK
Special Assistant United States Attorney
North Carolina Bar Number: 49212
eric.frick@usdoj.gov

Attorneys for the United States
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, NC 28202
(704) 344-6222 (office)
(704) 344-6629 (facsimile)

CERTIFICATION

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1.     No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2.     Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 9th day of December, 2024.

s/ Caryn Finley
Assistant United States Attorney